USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/22/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
           :
JAMES M. CROFT and DANIEL E. CROFT, Trustees  :
of the CROFT IRREVOCABLE TRUST, real party in  :
interest, on behalf of the trust,  :    17-CV-9355 (JMF)
           :
           Plaintiffs,  :
           :    <u>OPINION AND ORDER</u>
    -v-  :
           :
AXA EQUITABLE LIFE INSURANCE COMPANY,  :
           :
           Defendant.  :
           :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiffs James M. Croft and Daniel E. Croft bring this suit on behalf of the Croft Irrevocable Trust (the "Trust") against Defendant AXA Equitable Life Insurance Company ("AXA"), alleging that, by increasing the cost of insurance ("COI") for a life insurance policy held by the Trust, AXA breached the terms of the policy, violated the Arizona Consumer Fraud Act ("ACFA"), and breached the duty of good faith and fair dealing. (Docket No. 40 ("Am. Compl."), ¶¶ 82-152). AXA now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for partial dismissal of Plaintiffs' Amended Complaint. (Docket No. 45). For the reasons that follow, AXA's motion is GRANTED in all but one narrow respect.

## BACKGROUND

       This case is one of several pending before this Court relating to AXA's increase of COI for life insurance policies issued on a standard form called Athena Universal Life II ("AUL II"). *See Brach Family Found., Inc. v. AXA Equitable Insurance Co.*, 16-CV-740 (JMF), 2016 WL 7351675 (S.D.N.Y. Dec. 19, 2016); *Brach Family Found., Inc. v. AXA Equitable Life Ins. Co.*,

No. 16-CV-740 (JMF), 2017 WL 5151357 (S.D.N.Y. Nov. 3, 2017), *reconsideration denied sub nom. In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-CV-740 (JMF), 2018 WL 3632500 (S.D.N.Y. July 30, 2018); *EFG Bank AG v. AXA Equitable Life Ins. Co.*, No. 17-CV-4767 (JMF), 2018 WL 904238 (S.D.N.Y. Feb. 14, 2018); *EFG Bank AG v. AXA Equitable Life Ins. Co.*, No. 17-CV-4767 (JMF), 2018 WL 1918627, (S.D.N.Y. Apr. 20, 2018). As the Court has previously explained, AUL II policies are flexible-premium universal life policies, under which a policyholder is required to make an initial premium payment and, thereafter, can choose when and how much to pay in premiums. *See Brach Family Found.*, 2016 WL 7351675, at *1. Premiums are placed in a policyholder's Policy Account — the functional equivalent of a savings account — from which AXA deducts COI and administrative charges on a monthly basis. *See id.* If the Policy Account is insufficient to cover the monthly charges, the policy will lapse (absent a no-lapse guarantee); the policyholder earns interest on any funds in the Policy Account. *See id.* Upon the insured's death, AXA pays the policy beneficiary the specified death benefit, also known as the face amount of the policy. *See id.*

The policy at issue in this particular case was purchased in 2006 by the insured, James E. Croft, and had a face amount of $5 million. (Am. Compl. ¶¶ 32). James E. Croft subsequently transferred ownership of the policy to the Trust, which paid the required monthly premiums. (*Id.* ¶¶ 33-34). On October 5, 2015, AXA notified the Trust that it was increasing COI for the policy — beginning with the first monthly deductions of 2016. (*Id.* ¶ 53). In December 2015, however, AXA announced that it was deferring the COI increase until the first monthly deduction processed on or after March 8, 2016. (*Id.* ¶ 54). The Amended Complaint is (perhaps deliberately) silent with respect to precisely when the increased COI rates began to be deducted,

but the policy "lapsed for non-payment on September 11, 2017." (*Id.* ¶ 39). When James E. Croft passed away a few months later, AXA did not pay the Trust. (*See id.* ¶ 40).

Plaintiffs filed this suit on October 25, 2017 in Maricopa County Superior Court, in Arizona; it was subsequently removed to the District of Arizona and then transferred to this District. (Docket Nos. 1, 17). As noted, the Amended Complaint alleges claims for breach of contract, violation of ACFA, and breach of the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 82-152). Plaintiffs seek special damages, general damages, punitive damages, and, in the alternative, rescission of the contract, as well as attorneys' fees and costs. (*Id.* ¶ 152).

## LEGAL STANDARDS

In reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 319 (S.D.N.Y. 2012). A court may not dismiss claims pursuant to Rule 12(b)(6) unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.

**DISCUSSION**

As noted, AXA moves only for partial dismissal. Specifically, AXA moves to dismiss Plaintiffs' ACFA claim, their good-faith-and-fair dealing claims, and their claim for rescission. (Docket No. 46 ("AXA Mem."), at 7-25).[1] The Court will address each of argument in turn.

**A. ACFA**

AXA seeks dismissal of Plaintiffs' ACFA claim on the ground that it is time barred. (AXA Mem. 8-10). Ordinarily, a statute of limitations is "an affirmative defense that must be raised in the answer." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). It is well established, however, that "a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Id.* (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)); *see NECA-IBEW Pension Tr. Fund v. Lewis*, 607 F. App'x 79, 81 (2d Cir. 2015) (summary order) (affirming dismissal on statute of limitations grounds where the plaintiff's own allegations showed that the statute of limitations had expired); *Lefebvre v. Morgan*, — F. Supp. 3d —, No. 14-CV-5322 (KMK), 2016 WL 1274584, at *16 (S.D.N.Y. Mar. 31, 2016) (citing cases); *see also* 5 Wright & Miller, Federal Practice & Procedure § 1226 (3d ed. 2004) ("[T]he current trend in the cases is to allow [a statute of limitations defense] to be raised by a motion to dismiss under Rule 12(b)(6) when the defect appears on the face of the complaint."). That is the case here.

---

[1] AXA does not move to dismiss Plaintiffs' breach-of-contract claim except to the extent it is based on a theory that the contract was "not executed in accordance with the procedures and standards on file with the relevant California, New York, or Arizona Department of Insurance procedures." (Am. Compl. ¶ 58; *see* AXA Mem. 24-25). In their memorandum of law in opposition to AXA's motion, however, Plaintiffs clarify that they "mak[e] no such claim or cause of action." (Docket No. 62 ("Pls.' Br.") at 11). Accordingly, that portion of AXA's motion is granted as unopposed.

4

Claims brought under ACFA must be initiated "within one year after the cause of action accrues." *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1380 (Ariz. Ct. App. 1994). An ACFA claim accrues when the plaintiff "possess[es] a minimum requisite of knowledge sufficient to identify that a wrong occurred *and* caused injury." *Grimmelmann v. Pulte Home Corp.*, No. CV-08-1757 (FJM), 2010 WL 2744943, at *3 (D. Ariz. July 9, 2010) (emphasis added) (internal quotation marks omitted); *see id.* ("A misrepresentation alone will not support a claim under the ACFA; actual injury or damages must occur."). The task of fixing that date here is complicated by the fact that the Amended Complaint does not explicitly allege when the COI increase went into effect. But the allegations in the Amended Complaint — that AXA announced in October 2015 that the rates would increase "effective with the first *monthly* deductions occurring in 2016" and announced two months later that it would "defer the effective date . . . until the first *monthly* deduction process on or after March 8, 2016" (Am. Compl. ¶¶ 53-54 (emphases added)) — allow for only one reasonable inference: The ACFA claim accrued no later than March or April 2016, upon the first deduction of the increased monthly COI. (*See also id.* ¶ 71 (alleging that "the exorbitant COI increase [took place] in 2016.")).[2] As Plaintiffs did not file suit until October 2017 — well more than one year later — the ACFA claim is plainly time barred.

In arguing otherwise, Plaintiffs contend that their ACFA claim did not accrue until September 2017, when "the policy lapsed and the insured survived its lapsing." (Pls.' Br. at 3-4;

---

[2] In their opposition brief, Plaintiffs assert in conclusory fashion that "[t]he COI did not increase until September 2017." (Pls.' Br. 5). It is well established, however, that a "party cannot urge inferences that are inconsistent with its own pleadings." *Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, No. 94-CIV-8301 (JFK), 1995 WL 380119, at *3 (S.D.N.Y. June 26, 1995); *see also, e.g.*, *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) ("[T]he sparse case law addressing the effect of factual allegations in briefs or memoranda of law suggests that such matters may never be considered when deciding a 12(b)(6) motion, and most certainly may not be considered when the facts they contain contradict those alleged in the complaint." (citation omitted)).

*see also id.* at 4 ("Even though the Plaintiff may have been aware that it might suffer damage [as of October 2015], there was a possibility during the interim, in 2015 and 2016, that it would accrue no damage. For example, the insured could have passed away at any time prior to the lapsing of the policy.")). But that argument is premised on a misunderstanding of the nature of Plaintiffs' own claim. The gravamen of their claim is that AXA misrepresented when and by how much the COI rates could be increased. (Am. Compl. ¶¶ 13, 18, 29). It follows that they suffered injury (if at all) when the COI rate increase went into effect. The fact that the Trust may have had enough money in its Policy Account to satisfy the monthly premium payments until September 2017 is of no moment. To the extent that AXA's alleged misrepresentations or omissions caused injury or damages, they did so no later than March or April 2016, when the COI rate increase went into effect. It follows that Plaintiffs' ACFA claim must be and is dismissed as time barred. *See, e.g.*, *Wechsler v. HSBC Bank USA, N.A*, No. 15-CV-5907 (JMF), 2016 WL 1688012, at *4 (S.D.N.Y. Apr. 26, 2016) (granting a motion to dismiss on the ground that, looking only at the face of the complaint, the claims were time barred), *aff'd*, 674 F. App'x 73 (2d Cir. 2017).

**B. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Next, citing the Court's decision in *EFG Bank AG*, AXA contends that Plaintiffs' "implied covenant claim" must be dismissed because it is duplicative of their express contract claims. (AXA Mem. 19-20). Under Arizona law, "a party to a contract . . . cannot breach the implied covenant [of good faith and fair dealing] merely by failing to comply with one of the contract's express terms." *Tai v. Minka Lighting, Inc.*, No. 16-CV-2810 (DLR), 2017 WL 568519, at *4 (D. Ariz. Feb. 13, 2017) (citation and internal quotation marks omitted). A claim alleging breach of the implied covenant must therefore be dismissed if the plaintiff "has not

explained how Defendants have breached the implied covenant other than through the breach of an express contractual term." *Aspect Sys., Inc. v. Lam Research Corp.*, No. 06-CV-1620 (NVW), 2006 WL 2683642, at *3 (D. Ariz. Sept. 16, 2006) (citing *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 435 (Ariz. Ct. App. 2002); *see also Revive You Media LLC v. Esquire Bank*, No. 18-CV-541 (DGC), 2018 WL 2164379, at *5 (D. Ariz. May 10, 2018) ("[A] breach of the implied covenant cannot depend on the same exact facts as an alleged breach of an express contractual term."). That is the case here. Indeed, Plaintiffs' implied-covenant claim depends on the exact same set of facts as their breach-of-contract claim. They contend that AXA "expressly promise[d] to increase the cost of insurance if only one or more of the six express conditions occur[ed]," (Am. Compl. ¶ 130), and assert that AXA's decision to raise the COI "was not based on one of [those] six reasonable assumptions listed in the policy," (*id.* ¶ 136). According to Plaintiffs, therefore, AXA breached "its duty of good faith and fair dealing" by "forc[ing] the Trust to pay unreasonable increases in [the COI premium] for reasons outside those expressed in the policy." (*Id.* ¶ 139). Plaintiffs' allegations in support of their contract claim are identical. (*See id.* ¶ 84 (alleging a breach of contract because AXA raised the COI premium in violation of the "terms of the policy")). Accordingly, their implied-covenant claims must be and are dismissed. *See EFG Bank AG*, 2018 WL 904238, at *3 (dismissing implied-covenant claims for the same reason).[3]

---

[3] Plaintiffs' arguments to the contrary are unpersuasive because they mischaracterize their implied-covenant claims as turning on AXA's "wrongful cancellation of benefits." (Pls.' Br. 111-14). But that claim is nowhere to be found in Plaintiffs' Amended Complaint. Instead, as discussed above, Plaintiffs' implied-covenant claim turns on AXA's allegedly unlawful increase in COI premiums, not on the wrongful termination of benefits. (*See* Am. Compl. ¶¶ 122-51). Moreover, as AXA rightly points out, any claim alleging wrongful termination of benefits would encounter other significant hurdles. (*See* Docket No. 68, at 8)

Relatedly, AXA also seeks to dismiss Plaintiffs' implied-covenant claims to the extent that they sound in tort. (*See* AXA Mem. 20-21). The Amended Complaint is not clear with respect to whether it alleges a tort violation — the only hint regarding such a tort is Plaintiffs' plea for an award of punitive damages for their implied-covenant claim. (*See* Am. Compl. ¶ 152). The Court would be on firm ground dismissing any tort claim on that basis alone. *See, e.g.*, *Wright v. Santoro*, 714 F. Supp. 665, 666 (S.D.N.Y. 1989) (dismissing a claim where the "[a]llegations . . . [were] too vague to withstanding a motion to dismiss"), *aff'd*, 891 F.2d 278 (2d Cir. 1989) (mem.). On top of that, however, dismissal is warranted substantially for the reasons stated in *EFG Bank AG*, 2018 WL 904238, at *3-7. In that case, the Court dismissed a claim for tortious interference with the implied covenant under California law, holding that it did not apply because the plaintiffs did not "allege that AXA has withheld insurance benefits owed under the policies." *Id.* at *4. As here, the plaintiffs in *EFG Bank AG* claimed that AXA had impermissibly raised the COI premiums. *Id.*. The Court reasoned that California law would not extend the tort claim to the facts of that case because "doing so finds little or no support in the underlying policy rationales for the exception." *Id.*

The Court's reasoning in *EFG Bank AG* applies with equal force here. Like their California counterparts, Arizona courts recognize a tortious interference claim in the insurance context where "the insurer fails to provide the insured with the security and protection from calamity which is the object of the relationship." *Rawlings v. Apodaca*, 726 P.2d 565, 576 (Ariz. 1986); *see also Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1268 (Ariz. 1992) ("[T]he implied covenant of good faith and fair dealing requires that an insurer treat its insured fairly *in evaluating claims*." (emphasis added)); *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000) ("The tort of bad faith arises when the insurer 'intentionally denies,

8

fails to process or pay a claim without a reasonable basis.'" (quoting *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981)). Significantly, however, they have "rejected the tort of bad faith in other contexts," particularly where the plaintiff "contracts for a commercial benefit, not for security akin to that found in insurance contract." *Gould v. M & I Marshall & Ilsley Bank*, No. CV-11-1299 (DGC), 2011 WL 5826031, at *4 (D. Ariz. Nov. 18, 2011) (citing *Dodge v. Fid. and Deposit Co. of Md.*, 778 P.2d 1240 (Ariz. 1989)). Indeed, the rationales identified by the Supreme Court of Arizona in its seminal decision in *Rawlings* concern the adjudication of claims to coverage — not the setting of premiums. *See* 726 P.2d at 571 ("[O]ne of the benefits that flow from the insurance contract is the insured's expectation that his insurance company will not wrongfully deprive him of the very security for which he bargained or expose him to the catastrophe from which he sought protection."). Because the Court is aware of no Arizona precedent extending this tort to an insurance claim concerning premiums, and because the rationales identified in Arizona law do not support such an extension, the Court determines that to the extent that Plaintiffs have alleged tortious interference with the implied covenant of good faith and fair dealing, that claim must be and is dismissed.

**C. Rescission**

Finally, AXA argues that Plaintiffs' claim for rescission — "an order rescinding the contract and requir[ing] AXA to return all the premiums paid together with interest and attorney's fees" (Am. Compl. ¶ 152(D)) — is "not available as a matter of law." (AXA Mem. 22). On their face, AXA's arguments on that score are not without force. It argues, for example, that "rescission would be inequitable" here, that it would be "impossible" to award rescission, and that any claim to rescission is barred by a statute of limitations. (AXA Mem. 22-23). But each of those arguments is fact-based and, thus, may not be resolved on a motion to dismiss.

9

*See, e.g.*, *Long v. City of Glendale*, 93 P.3d 519, 526 (Ariz. Ct. App. 2004) (holding that the trial court erred in granting a motion to dismiss rescission claims because the question of whether rescission was appropriate was "a factual issue"). Accordingly, AXA's motion to dismiss Plaintiffs' rescission claim is denied without prejudice to renewal on summary judgment.

## CONCLUSION

For the foregoing reasons, AXA's motion to dismiss is GRANTED except to the extent it seeks dismissal of Plaintiffs' rescission claim. Plaintiffs do not request leave to amend, and the Court declines to grant it *sua sponte*. *See, e.g.*, *Ritchie Capital Mgmt., LLC v. Gen. Elec. Capital Corp.*, 821 F.3d 349, 351-52 (per curiam) (2d Cir. 2016) (holding that it was not an abuse of discretion to deny the plaintiffs an opportunity to amend their complaint where they "did not ask the district court for leave to amend"). For one thing, a district court may deny leave to amend when, as here, amendment would be futile because the problems with a plaintiff's claims are "substantive" and "better pleading will not cure" them. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). For another, Plaintiffs were already granted leave to amend their complaint to cure deficiencies raised in AXA's first motion to dismiss and were explicitly cautioned that they "w[ould] not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." (Docket No. 31).

Unless the Court orders otherwise, AXA shall file an answer with respect to the surviving claims **within three weeks of this Opinion and Order**. The Clerk of Court is directed to terminate Docket No. 45.

SO ORDERED.

Date: August 22, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge